# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                           No. CR 10-3239 JB

CHRISTIAN ALEXANDER SANGIOVANNI,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) Mr. Sangiovanni's Motion in Limine, filed March 11, 2013 (Doc. 45)("MIL"); and (ii) Mr. Sangiovanni's Objections to the Government Exhibits, filed March 13, 2013 (Doc. 47)("Objections").   The primary issues are: (i) whether the Court should allow Plaintiff United States of America to introduce into evidence photographs allegedly of Defendant Christopher Alexander Sangiovanni holding a firearm; (ii) whether the Court should allow into evidence an electronic mail transmission that Sangiovanni allegedly sent to Shelby VanDerStraeten, a witness for the United States in this case; (iii) whether the Court should allow into evidence a telephone recording allegedly between VanDerStraeten and Sangiovanni; (iv) whether the Court should require the jury to find beyond a reasonable doubt that Sangiovanni was kidnapping VanDerStraeten when the offense allegedly occurred; and (v) whether the Court should prohibit the United States from introducing evidence that may demonstrate that Sangiovanni was kidnapping VanDerStraeten when he allegedly possessed a firearm.   The Court will deny the MIL and overrule the Objections.   The Court determines that, provided the United States lays sufficient foundation evidence at trial, the photographs, electronic mail transmission, and telephone conversation are all relevant evidence, the prejudicial effect of which does not substantially outweigh their probative value.   The Court will not require the jury to find that Sangiovanni committed kidnapping, because the Court need only require a jury to find

a fact would increase Sangiovanni's maximum statutory sentence, not conduct such as kidnapping which only may enhances his possible guidelines sentence.   Lastly, the United States may bring forth evidence of the circumstances surrounding Sangiovanni's alleged possession of a firearm, because that evidence is helpful res gestae that is helpful for a full presentation of the case.

## FACTUAL BACKGROUND

Christian Alexander Sangiovanni is indicted on one count: felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   See Indictment, filed December 1, 2010 (Doc. 4).   The grand jury found that Sangiovanni, a felon, possessed a Smith & Wesson, model 459, 9mm pistol and approximately twelve Remmington 9mm caliber cartridges of ammunition.   See Indictment at 1.   Pursuant to a search warrant, Albuquerque Police Department ("APD") officers recovered the pistol and cartridges at Sangiovanni's home on May 3, 2010; Sangiovanni did not live alone.   See the United States' Response to Defendant's Motion in Limine at 1-2, filed March 14, 2013 (Doc. 49)("Response").

The United States seeks to introduce two photographs of a person, whom the United States asserts is Sangiovanni, holding a pistol to his head.   See United States's Second Amended Exhibit List at 1, filed March 11, 2013 (Doc. 41)("Exhibit List").   One of the photographs is dated March 24, 2010, within a month of April 25, 2010, when the incident giving rise to the Indictment occurred.   See Transcript of Hearing 23:18-22 (Cairns, Jessen)(taken Mar. 15, 2013)("Tr.")[1]; Complaint at 1, filed May 10, 2010 (Doc. 1).   The other photograph is dated May 3, 2010, just after the incident giving rise to the Indictment.   See Tr. at 30:8-11 (Cairns).

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

- 2 -

The United States also seeks to introduce an electronic mail transmission, which Sangiovanni alleged sent to VanDerStraeten on April 26, 2010 at 2:53 a.m.   See Exhibit List at 1; Tr. at 35:20-22 (Cairns).   The text of the electronic mail transmission reads: "Fuk u u dumbass bitch u ain t gone prove shit. Fuk u n ur story.   Ain t ne body gone believe u.   U gone try 2fuk me over? U can t even prove I do heroin.   Fukn bitch ass spoiled brat.   Hav a nice fukn life alone. Haha."   Tr. at 35:2-10 (Cairns).   Finally, the United States also seeks to introduce an audio recording of a telephone call between Sangiovanni and VanDerStraeten.   See Exhibit List at 1.

## PROCEDURAL BACKGROUND

This matter is set for trial on March 18, 2013.   See Order Granting Continuance of Trial Setting, at 1, filed February 8, 2013 (Doc. 31).   Sangiovanni seeks to limit the United States' use of certain evidence of trial.   First, Sangiovanni asserts that the United States possesses "images showing Mr. Sangiovanni with things that look as though they may be firearms, and which may or may not be relevant to the accusation that he possessed the particular firearm alleged in the indictment."   MIL ¶ 2, at 1-2.   Sangiovanni requests that the Court to exclude those images "except to the extent that the images are shown to be relevant" to his charged offense.   MIL ¶ 2 at 2.

Second, Sangiovanni requests that the Court exclude the United States' evidence consisting of "a wide variety of communications and drawing either purported to have been authored or created by Mr. Sangiovanni, or were addressed by him."   MIL ¶ 3, at 2.   Sangiovanni asserts that this evidence is irrelevant, and that the danger of unfair prejudice to him that this evidence poses "substantially outweighs" its "miniscule or non-existent probative value."   MIL ¶ 3, at 2 (citing Fed. R. Evid. 403).

- 3 -

Lastly, Sangiovanni requests that the Court prohibit the United States from presenting evidence that he possessed the firearm at issue in this case "in connection with the commission of the state offense of kidnapping."   MIL ¶ 4, at 2.   The United States Probation Office ("USPO") concluded in its Form 13 Presentence Investigative Report that Sangiovanni possessed the pistol at issue in this case while he was committing kidnapping, and the USPO accordingly finds that Sangiovanni's offense level should be increased based upon that fact.   Sangiovanni notes that he has requested that the Court require the jury to find that he committed kidnapping while possessing the pistol, because that fact would greatly increase his offense level.   Sangiovanni requests that, if the Court does not require the jury to find that he was committing kidnapping when he possessed the pistol, then the Court prohibit the United States from presenting any evidence that he was kidnapping, "including without limitation any threats or actions which could constitute violations of other statutes, state or federal, including without limitation the New Mexico offense of kidnapping."   MIL ¶ 4, at 2-3.   Sangiovanni contends that such evidence would unduly prejudice the jury against him if the Court does not require the jury to find that he committed kidnapping while possessing the pistol.   See MIL ¶ 4, at 3.

The United States contends, first, that the photographs to which Sangiovanni objects are relevant and admissible.  The United States states that the APD officers, pursuant to a search warrant, found the pistol at issue in this case at 2020 Elaine Place NE, Albuquerque, New Mexico, on May 3, 2010, where Sangiovanni resided, but not alone.  The United States asserts that it intends to present testimony at trial that the firearm Sangiovanni is holding in the photographs is consistent with being the pistol the possession of which he is charged with in the Indictment.   The United States also asserts that officers found a large capacity magazine at the residence and that, in

one of the photographs it seeks to admit, Sangiovanni "is clearly holding a pistol, which appears to be the one in the indictment, and which clearly has a large capacity magazine protruding from the grip."   Response at 1-2.

The United States also asserts that rule 404(a) of the Federal Rules of Evidence does not bar this evidence, because its danger of unfair prejudice does not substantially outweigh its probative value.   The United States asserts that Sangiovanni is charged with possession of a firearm on the date of April 25, 2010, and that one of the photographs is dated March 24, 2010, evidence which the United States asserts could allow a reasonable juror to conclude that Sangiovanni had access to the firearm on the date of the charged offense.   See Response at 3. The United States also asserts that the photographs demonstrate that Sangiovanni had knowledge of the presence of a firearm, and dominion and control over the firearm: "If the Defendant possessed the same gun on past occasion, it is considerably more likely that he had continuing access to the gun at the time it was found . . . ."   Response at 3-4.

The United States "recognizes that this evidence, in other circumstances, might only be probative of the Defendant's criminal propensity."   Response at 4.   The United States contends that admitting the photographs "'does not require a jury to first draw the forbidden general inference of bad character or criminal disposition; rather, it rests on a logic . . . that a prior act involving the same knowledge decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense.'"   Response at 4 (quoting United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)).

The United States also offers to redact any unfairly prejudicial evidence from Sangiovanni's communications before introducing the communications at trial.   See Response at

4.  The United States contends that the jury should not be instructed on the elements of kidnapping and that there is no basis for Sangiovanni's request for such an instruction.  See Response at 5.  The United States asserts that the case upon which Sangiovanni "appears to base[]" his request is Apprendi v. New Jersey, 530 U.S. 466 (2000), which the United States asserts requires a jury instruction only where a fact would increase a defendant's statutory maximum sentence, not, as in Sangiovanni's case, where the commission of kidnapping in the course of possessing a firearm would increase his offense level under the sentencing guidelines. Response at 5 (citing United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005)).

The United States also asserts that it should be allowed to introduce evidence of Sangiovanni's conduct at the time of the charged offense.   The United States contends Sangiovanni's conduct at the time he allegedly possessed a firearm is "inextricably intertwined" with testimony of witnesses the United States intends to call.  Response at 5-6 (citing United States v. Johnson, 42 F.3d 1312, 1316 (10th Cir. 1994), United States v. Record, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989)).   The United States asserts that, if it is not allowed to elicit testimony regarding Sangiovanni's conduct at the time of the alleged offense, the witness' testimonies are likely to be confusing and of less credence to the jury.   The United States asserts that, without evidence of Sangiovanni's other conduct, "the witness would likely only be able to testify that she went to the store and saw Defendant possessing a firearm," and that such testimony would not convey to the jury why the witness vividly remembers seeing the pistol or why she contacted the police at the time.   Response at 6.   The United States also contends that evidence of Sangiovanni's other conduct when he allegedly possessed the pistol is relevant to proving his "motive, intent, preparation, plan, identity, and absence of mistake or accident."   Response at 6.

The United States asserts that Sangiovanni appears to have possessed the pistol for the purpose of threatening a victim and that it would be impossible to prove Sangiovanni's motive without evidence of the circumstances surrounding the alleged offense.   See Response at 5-6.

The United States contends that the Court should preclude Sangiovanni from introducing any information regarding the statutory maximum sentence or the guideline sentencing range that he faces.   The United States asserts that, under the United States Court of Appeals for the Tenth Circuit's pattern jury instructions, a juror's duty is to "'base [his or her] verdict solely upon the evidence, without prejudice or sympathy.'"   Response at 7 (quoting Tenth Circuit Pattern Jury Instruction Criminal 1.04, at 9 (2011)(Duty to Follow Instructions).   The United States contends that the jury instructions further prohibit a juror from considering punishment when weighing a defendant's guilt.   See Response at 7 (citing United States v. Parrish, 925 F.2d 1293, 1299 (10th Cir. 1991)).

Sangiovanni filed specific objections to the United States' Exhibit List.   Sangiovanni objects to three items that the United States seeks to introduce as evidence at trial.   First, Sangiovanni objects that the photographs which the United States seeks to introduce, allegedly of Sangiovanni, "bring little or no probative value to the trial," and their unfair prejudice outweighs any probative value they bring.   Objections at 1.   Second, Sangiovanni objects to the United States' introduction of an electronic mail transmission, which Sangiovanni allegedly sent to VanDerStraeten, on the basis that the electronic mail transmission lacks adequate foundation. See Objections at 1.   Lastly, Sangiovanni objects to the United States' introduction of a "phone call alleged to have taken place between Mr. Sangiovanni" and VanDerStraeten, on the basis that the telephone call is "irrelevant, cumulative and lacking in foundation."   Objections at 2.

The Court held an evidentiary hearing on March 15, 2013. Sangiovanni stated that the United States intends to introduce photographs "which the [g]overnment believes to be Mr. Sangiovanni[,] o[r] somebody[,] holding [] what looks like to be a firearm, [and] there's no obvious[]pro[of] [of who] that it is."  Tr. at 15:19-16:3 (Robert).  Sangiovanni asserted that photographs of him holding a firearm at some point in time are not relevant whether he possessed a firearm on April 25, 2010, the date of the incident.  See Tr. at 16:6-15 (Robert).  Sangiovanni asserted that the photographs are not clear enough to tell who is depicted in them.  See Tr. at 17:11-17 (Court, Robert).  The Court stated that, because Sangiovanni is charged with being a felon in possession of a firearm, the timing of any photograph of him holding a firearm is important.  See Tr. at 17:23-18:1 (Court).  Sangiovanni asserted that their unfair prejudice outweighs any probative value of the photographs.  See Tr. at 18:19-7 (Robert).  Sangiovanni argued that the photographs are, first, not relevant under rule 401, and second, unfairly prejudicial under rule 403.  See Tr. at 19:12-17 (Court, Robert).

At the hearing, Paul Jessen, a special agent with the United States Bureau of Alcohol, Tobacco and Firearms testified regarding the photographs.  See Tr. at 20:3-6 (Jessen).  Jessen stated that he believes that the photographs depict a firearm, but that he cannot tell "definitively" regarding one of the photographs.  See Tr. at 21:1-2 (Jessen)("In my examination of the photographs and any other evidence I believe it is a firearm."); id. at 23:13-16 (Cairns, Jessen)(Q: "[D]oes this weapon here in this photograph appear to be a .9 millimeter handgun with an extended magazine?" A: "It appears to be a firearm with an extended magazine."); id. at 26:20-24 (Robert, Jessen)(Q: "You can't say that it's a firearm can you?" A: "By definition no.  It has the character[istics] of a firearm.").  Jessen stated that the United States acquired the photographs

from VanDerStraeten and that Sangiovanni first sent the photographs to her by electronic mail transmission.   See Tr. at 21:3-14 (Cairns, Jessen); id. at 24:24-25:3 (Cairns, Jessen).

The United States asserted that, if photographs of the defendant holding a firearm are not relevant when the defendant is charged with being a felon in possession, then no evidence is relevant.   See Tr. at 22:13-17 (Cairns).   Sangiovanni responded that the United States' assertion "begs the question" and that the photographs do not depict anything "definitively."   Tr. at 22:18-20 (Robert).   The United States contended that it knows that the photographs depict Sangiovanni, because the person in the photographs has tattoos identical to Sangiovanni's.   See Tr. at 27:19-20 (Cairns).   The United States asserted that the "fact that Mr. Sangiovanni is in these photographs holding a firearm that appears [to be] the one that's charged in the [Indictment] make it more likely [] than not that he had access to that firearm [and] ability to control that firearm."   Tr. at 28:13-21 (Cairns).   The United States asserted that a reasonable juror could conclude that the firearm in the photographs is the one with which Sangiovanni is charged with possession and that is all the United States needs to prove.   See Tr. at 28:22-29:12 (Rowley).   The United States asserted that a defendant's knowledge of a firearm is always relevant when the defendant is charged with possession of a firearm.   See Tr. at 29:16-23 (Rowley).   The United States argued that it should be allowed to present evidence of Sangiovanni's knowing possession of a firearm in the past.   See Tr. at 30:1-7 (Rowley).

Sangiovanni asserted that the United States is seeking to introduce prohibited propensity evidence with the photographs, and that his conduct before and after the incident is irrelevant. See Tr. at 30:13-32:3 (Robert).   Sangiovanni also asserted that the photographs lack sufficient foundation to be admissible.   See Tr. at 32:5-16 (Robert).   The United States contended that it is

not attempting to introduce propensity evidence, but rather that evidence of Sangiovanni's previous knowledge makes his lack of knowledge in the current charged offense less probable. See Tr. at 32:22-33:7 (Rowley).

The Court stated that it believes that the photographs are relevant, because of the similarity between the firearm in the photographs and the firearm at issue in this case, and that it intends to admit the evidence. See Tr. at 33:13-21 (Court). The Court stated that it can give a limiting instruction that the evidence is not to be used for propensity, if Sangiovanni desires. See Tr. at 33:23-34:6 (Court).

The Court then turned to the communications that Sangiovanni sought to exclude at trial. See Tr. at 34:17-22 (Court). Sangiovanni contended that the electronic mail transmission is not relevant to his alleged possession of a firearm. See Tr. at 35:12-14 (Robert). The United States responded that the electronic mail transmission demonstrates that Sangiovanni was attempting to intimidate a witness. See Tr. at 35:15-17 (Cairns). The United States pointed out that the electronic mail transmission was sent "hours after the offense had occurred." Tr. at 35:22-25 (Cairns). The United States asserted that the jury could infer that Sangiovanni admits his guilt from the electronic mail transmission, because he was trying to keep VanDerStraeten from going to the police. See Tr. at 36:2-5 (Cairns). Sangiovanni asserted that the electronic mail transmission lacks foundation and is irrelevant, and that the United States is, "once again," attempting to introduce character evidence against him. Tr. at 36:17-37:1 (Robert). Sangiovanni asserted that the jury would find the electronic mail transmission "repulsive . . . [and] offens[ive]," and that the statements have nothing to do with the United States' charge against him. Tr. at 38:10-21 (Robert). The Court told the United States to redact the line about heroin usage

- 10 -

from the electronic mail transmission and stated that it is inclined to admit the electronic mail transmission, and the United States agreed to the redaction.  See Tr. at 38:22-39:10 (Court, Cairns).

The Court then turned to Sangiovanni's arguments regarding the admission of evidence at trial that he was kidnapping VanDerStraeten at the time of the incident.  See Tr. at 39:22-40:3 (Court).  The Court noted that, if the kidnapping offense increased the statutory maximum for which Sangiovanni could be sentenced, then the jury would need to be instructed on the facts regarding Sangiovanni's alleged kidnapping offense, but, because the kidnapping offense enhances only Sangiovanni's possible guidelines sentence, the facts should not go to the jury. See Tr. at 41:3-9 (Court).  Sangiovanni asserted that there is something "profoundly and fundamentally wrong with" the Court sentencing him on the basis of facts that the Court found by only a preponderance of the evidence, and not beyond a reasonable doubt.  Tr. at 41:20-25 (Robert).  The United States asserted that the Tenth Circuit has already decided the issue, and that to introduce an instruction regarding Sangiovanni's possible sentence would be contrary to "case law and contrary to the jury instructions."  Tr. at 42:3-8 (Rowley).  The Court stated that, under the case law, it should not allow at trial discussion of the sentencing enhancement for the commission of a kidnapping.  See Tr. at 42:14-22 (Court).

Regarding the admissibility of the circumstances surrounding the alleged offense, the Court stated that the parties may redact some of the prejudicial facts so that the circumstances presented can be as succinct as possible.  See Tr. at 42:23-43:8 (Court).  Sangiovanni asserted that all that the Court should allow the United States to present at trial is that VanDerStraeten and Sangiovanni "sat in a car on April 25th and Mr. Sangiovanni had a gun in his hand."  Tr. at

- 11 -

43:18-44:1 (Robert).   Sangiovanni asserted that the testimony is all the evidence that is necessary.

See Tr. at 44:1-5 (Robert).   The United States responded that not to allow VanDerStraeten to

testify that Sangiovanni got in a car with VanDerStraeten, he pointed a gun at her, and threatened

to kill them both would not allow VanDerStraeten to testify regarding the "actual [e]vent that gave

rise to the charge."   Tr. at 44:11-45:8 (Cairns, Court).   The Court stated that it is inclined to allow

VanDerStraeten to testify to the circumstances surrounding the incident, as the circumstances are

relevant to Sangiovanni's motive why he had a gun, which will be important at the trial.   See Tr.

at 45:21-24 (Court).

The Court then addressed Sangiovanni's objection to the introduction at trial of a telephone

call allegedly between Sangiovanni and VanDerStraeten.   See Tr. at 47:18-19 (Court).   The

United States contended that Sangiovanni admits his guilt in the telephone call, and that a witness

to the telephone call recorded the conversation, which, the United States asserted, demonstrates

sufficient foundational evidence to admit the telephone call as relevant to Sangiovanni's guilt.

See Tr. at 48:16-49:1 (Cairns).   The United States suggested that it could redact statements that

Sangiovanni makes regarding his possible sentence for the charged offense, as they are inaccurate.

See Tr. at 49:3-14 (Cairns).   Sangiovanni stated that, if the Court admits the telephone call, he will

not ask that it be redacted, but contended that the telephone call is not relevant.   See Tr. at

49:15-17 (Court, Robert); id. at 50:1-5 (Robert); id. at 51:9-10 (Robert).   After listening to the

telephone call, the Court stated that the conversation appears to be evidence of the res gestae of the

crime.   See Tr. at 50:21-51:2 (Court).   The United States stated that it is concerned about

Sangiovanni overstating his possible sentence, as that may unfairly confuse the jury, but the Court

stated that it will allow the entire telephone conversation to be admitted, and if the parties want a

limiting instruction they may let the Court know.   <u>See</u> Tr. at 51:11-52:2 (Cairns, Robert, Court).

After the hearing, the United States filed a supplemental brief regarding the admissibility of the circumstances surrounding the incident that gave rise to the charges in the Indictment.   <u>See</u> United States' Trial Brief on Admissibility of Evidence of Circumstances that Gave Rise to the Charge in the Indictment, filed March 17, 2013 (Doc. 53)("Supp. Brief").   The United States asserts that the "majority" if its evidence relates to the Sangiovanni's "alleged assault on Ms. VanDerStraeten."   Supp. Brief at 1.   The United States asserts that evidence of the circumstances surrounding the incident are relevant as "direct evidence of the crime committed, that Sangiovanni possessed a firearm."   Supp. Brief at 2.   The United States asserts that to exclude evidence of the circumstances would "reward[]" Sangiovanni for pointing a firearm at her and "threatening to kill her."   Supp. Brief at 2.   The United States asserts that the probative value of this evidence is not unfairly prejudicial to Sangiovanni.   <u>See</u> Supp. Brief at 2-3.   The United States also contends that the evidence is appropriate res gestae evidence, as the circumstances surrounding the incident provides "'context for the crime, is necessary to a full presentation of the case, and is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.'"   Supp. Brief at 3 (quoting <u>United States v. Ford</u>, 613 F.3d 1263 (10th Cir. 2010))(internal alterations omitted).

## RELEVANT LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered

evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in original).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."   United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).   As the Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's

- 14 -

attitude toward the defendant wholly apart from its judgment as to the defendant's guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."  United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

## LAW REGARDING APPLICATION OF RULE 404

Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion."  Fed. R. Evid. 404(a).  "This rule is necessary because of the high degree of prejudice that inheres in character evidence.  In most instances, [the United States Court of Appeals for the Tenth Circuit is] unwilling to permit a jury to infer that an individual performed the alleged acts based on a particular character trait."  Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)(citing rule 404 advisory notes).

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  The same evidence, however, may be admissible for other purposes.  Permissible purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  See Fed. R. Evid. 404(b).  The Supreme Court has enunciated a four-part process to determine whether evidence is admissible under rule 404(b).

See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).   The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)).   See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996).

Rule 404(b)'s prohibition is based in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of the defendant's character.   See United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22A Charles A. Wright & Kenneth W. Graham, Fed. Practice and Procedure: Evidence § 5239, at 260-62 (2012).   In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

The Tenth Circuit has stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom."   United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).   "[A] broad statement merely invoking or restating Rule 404(b) will

not suffice." United States v. Youts, 229 F.3d at 1317.   "Uncharged, unrelated crimes or bad acts

may be probative to show knowledge, . . . whether the acts involved previous conduct or conduct

subsequent to the charged offense if the uncharged acts are similar to the charged crime and

sufficiently close in time." United States v. Valencia-Montoya, No. CR 11-2990, 2012 U.S. Dist.

Lexis 151534, at * 19 (D.N.M. Sept. 17, 2012)(Browning, J.)(citing United States v. Olivo, 80

F.3d 1466, 1468-69 (10th Cir. 1996)). See Lewis v. District of Columbia, 793 F.2d 361, 363

(D.C. Cir. 1986)(per curium)(holding that the admission of evidence of prior arrests is proper for

purposes of determining whether the plaintiff running from the police officers was result of a

mistake or to avoid arrest).

        The Court has previously allowed evidence in for the limited purposes set forth in rule

404(b).   For example, in United States v. Harry, No. CR 10-1915 JB, 2013 WL 6864646 (D.N.M.

Feb. 19, 2013)(Browning, J.), the Court admitted into evidence text messages that a defendant

accused of rape sent to a friend shortly after the alleged rape occurred.   In the text messages, the

defendant expressed remorse over the alleged rape and stated that he was "sorry."   2013 WL

6864646, at **4, 29-30.   The Court explained that the text messages were not prohibited by rule

404(a) because the United States intended to introduce the text messages to demonstrate the

defendant's "state of mind immediately after the alleged assault," a permitted purpose under rule

404(b).   2013 WL 6864646, at *29.   On the other hand, in Montoya v. Shelden, No. CIV 10-0360

JB/WDS, 2012 WL 4950707 (D.N.M. Oct. 12, 2012)(Browning, J.), a case in which plaintiffs

sought punitive damages for the defendants' use of excessive force against them, the Court did not

admit into evidence that the defendants had previously been sued for excessive force.   The Court

explained, "even if [the jury] tries mightily to faithfully follow the instruction to not use the

judgments for an improper purpose, [the Court is concerned that it] will use them to say that, because Shelden and Lovato used excessive force in the past, they did so again in this case."   See 2012 WL 4950707, at **17-19.

## LAW REGARDING RES GESTAE

The Tenth Circuit has explained that "[e]vidence of other crimes should not be suppressed when those facts come in as res gestae -- as part and parcel of the proof of the offense[ ] charged in the indictment."   United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)(alteration in original)(internal quotations and citations omitted).   The Tenth Circuit has approved using res gestae evidence "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae."   United States v. Kimball, 73 F.3d at 272   (internal quotations and citations omitted).   The Sixth Circuit has defined res gestae as "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense."   United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000)(citations omitted).   See United States v. McVeigh, 153 F.3d 1166, 1203 (10th Cir. 1999)(describing res gestae evidence as "inextricably intertwined with proper evidence" (internal quotations omitted)).   As the Sixth Circuit in United States v. Hardy explained,

> Proper background evidence has a causal, temporal or spatial connection with the charged offense.   Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's   testimony, or completes the story of the charged offense.

United States v. Hardy, 228 F.3d at 748 (citation omitted).   In Wilson v. Jara, No. CIV 10-0797, 2011 WL 6739166, (D.N.M Nov. 1, 2011)(Browning, J.), aff'd on other grounds, Wilson v. Jara,

No. 11-2231, 2013 WL 923192 (10th Cir. Mar. 12, 2013)(unpublished), the Court allowed evidence that, in the course of an allegedly unlawful arrest, a plaintiff spat on and touched the defendant police officers.   See 2011 WL 6739166, at *1, *8.   The Court concluded that the spitting was "res gestae of the incident," because it placed the plaintiff's conduct "in context": "If Wilson's touching of a police officer, and other conduct and speech, contributed to [her son's] resisting arrest, her conduct could be viewed as disturbing the peace and disorderly conduct. . . . Wilson should not be able to suggest that everything was calm and her son did not resist arrest." 2011 WL 6739166, at *8.   In United States v. Ganadonegro, No. CR 09-0312 JB, 2011 WL 3957549 (D.N.M. Aug. 30, 2011)(Browning, J.), the Court allowed evidence that a defendant, accused of causing the death of an infant child, called a family member on three occasions, stating that he could not get the infant to stop crying, and that when the family member arrived, the infant was crying.   The Court found that the evidence was res gestae and background information useful to "paint the picture that the baby cried a lot," and not that the defendant acted in conformity with his previous conduct.   2011 WL 3957549, at *1, *5 ("the evidence that the United States seeks to introduce is not 404(b) evidence, . . . it is closer to background evidence or res gestae evidence . . . .").   Additionally, in United States v. Zuni, No. CR 05-2369 JB, 2006 WL 4109664 (D.N.M. July 7, 2009)(Browning, J.), the Court admitted evidence that an alleged rape and kidnapping occurred after a defendant had a dispute with a victim regarding their children, and that the dispute escalated into violence and culminated in the charged offenses.   The Court determined that this evidence made the charged offenses understandable "by describing the context in which they arose," as these events had a "causal, spatial, and temporal connection with the charged offense."   2006 WL 4109662, at *6.

- 19 -

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, the Supreme Court of the United States reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."   530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution limits this discretion and that the Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490.   In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."   Blakely v. Washington, 542 U.S. at 303 (emphasis omitted)(citations omitted)(internal quotation marks omitted).   In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime."   United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013).   See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of Apprendi's requirement." (internal ellipsis, brackets, and quotations omitted)).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's

enhancement-findings analysis.   See United States v. Magallanez, 408 F.3d at 684-85.   United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine.   See 408 F.3d at 676.   As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the guidelines.   See United States v. Magallanez, 408 F.3d at 682.   The district court's findings increased the defendant's guideline sentencing range from 63 to 78 months to 121 to 151 months.   See United States v. Magallanez, 408 F.3d at 682-83.   The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684.   Although United States v. Booker made the guidelines "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."   408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence out to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."   United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510,

1516 (10th Cir. 1993)).[2]   "[T]he application of an enhancement . . . does not implicate the
Supreme Court's holding in <u>Apprendi v. New Jersey</u>."   <u>United States v. Reyes-Vencomo</u>, No. CR
11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.).   The Tenth Circuit
applies <u>Apprendi v. New Jersey</u>'s requirement that a fact be submitted to a jury only where the fact
would increase a defendant's sentence "above the statutory maximum permitted by the statute of
conviction."   <u>United States v. Price</u>, 400 F.3d at 847.   <u>Accord</u> <u>United States v. Ray</u>, 704 F.3d at
1314.   A defendant may only assert an error under <u>Apprendi v. New Jersey</u> where the fact at issue
increased his sentence beyond the statutory maximum.   <u>See</u> <u>United States v. O'Flanagan</u>, 339
F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under
<u>Apprendi v. New Jersey</u> because "his sentence does not exceed the statutory maximum"); <u>United</u>

---

[2] Although the Tenth Circuit stated in <u>United States v. Washington</u> that "the issue of a
higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth
Circuit has since classified its holding as leaving "open the possibility that due process may require
proof by clear and convincing evidence before imposition of a Guidelines enhancement that
increases a sentence by an 'extraordinary or dramatic' amount," <u>United States v. Ray</u>, 704 F.3d at
1314 (quoting <u>United States v. Olsen</u>, 519 F.3d at 1105).   <u>See</u> <u>United States v. Olsen</u>, 519 F.3d at
1105 (affirming the preponderance of the evidence standard for sentencing facts that increase a
sentence in the "'ordinary case'" (quoting <u>United States v. Washington</u>, 11 F.3d at 1516)).   The
Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher
standard of proof for certain facts about a defendant's sentence.   <u>See</u> <u>United States v.
Olsen</u>, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof
is required to sentence a defendant for committing perjury in relation to a grand jury investigation,
because the enhancement did not require the district court to determine that the defendant
committed murder, but only that he obstructed a homicide investigation); <u>United States v.
Constantine</u>, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance of the evidence
standard for facts that enhance a defendant's offense level four-levels); <u>United States v. Valdez</u>,
225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic
increase in a sentence because of a sentencing judge's finding of additional amounts of
methamphetamine associated with acquitted charges entitled the defendant to a
clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit
"foreclosed by binding precedent" this argument); <u>United States v. Washington</u>, 11 F.3d 1510,
1516 (10th Cir. 1993)(finding that a district court need not find by any more than a preponderance
of the evidence the amount of cocaine a defendant distributed, even though its findings increased
the defendant's sentence from twenty years to consecutive forty-year terms).

States v. Bennett, 329 F.3d 769, 778 (10th Cir. 2003)("Apprendi is not implicated . . . where judges

find facts increasing the mandatory minimum sentence below the maximum sentence for the crime

committed").

### LAW REGARDING RELEVANT CONDUCT AT SENTENCING

In calculating an appropriate sentence, the guidelines consider a defendant's "offense of

conviction and all relevant conduct under [U.S.S.G.] § 1B1.3 (Relevant Conduct) unless a

different meaning is specified or is otherwise clear from the context."   U.S.S.G. § 1B1.1 cmt.

n.1(H).   In United States v. Booker, the Supreme Court noted:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity --
> depends for its success upon judicial efforts to determine, and to base punishment
> upon, the real conduct that underlies the crime of conviction.   That determination
> is particularly important in the federal system where crimes defined as, for
> example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of
> any article or commodity in commerce, by . . . extortion," . . . can encompass a vast
> range of very different kinds of underlying conduct.

543 U.S. at 250-51 (quoting 18 U.S.C. § 1951(a))(emphasis in original).   The Supreme Court's

reasoning in United States v. Booker suggests that the consideration of real conduct is necessary to

effectuate Congress' purpose in enacting the guidelines.

Section 1B1.3 provides that the base offense level under the guidelines "shall be

determined" based on the following:

> (1)     (A)     all acts and omissions committed, aided, abetted, counseled,
> commanded, induced, procured, or willfully caused by the defendant; and
>
> (B)     in the case of a jointly undertaken criminal activity (a criminal
> plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with
> others, whether or not charged as a conspiracy), all reasonably foreseeable acts and
> omissions of others in furtherance of the jointly undertaken criminal activity,
> that occurred during the commission of the offense of conviction, in preparation for
> that offense, or in the course of attempting to avoid detection or responsibility for
> that offense;

(2)     solely with respect to offenses of a character for which [U.S.S.G.] § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)     all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)     any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).   The court may consider, as relevant conduct, actions that have not resulted in a conviction.   Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct.   The court may rely upon reliable hearsay information, so long as there as the evidence meets the preponderance-of-the-evidence standard.   See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.).   Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review.").[3]   The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.   See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility

---

[3] United States v. Schmidt is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . .  has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that United States v. Schmidt has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

under the rules of evidence applicable at trial, provided that the information has sufficient indicia
of reliability to support its probable accuracy.").

 1.     **The Supreme Court's Relevant Conduct Jurisprudence.**

In Witte v. United States, 515 U.S. 389 (1995), the Supreme Court upheld the use of
uncharged conduct at sentencing against a double-jeopardy challenge.   The defendant in Witte v.
United States had been involved in an unsuccessful 1990 attempt to import marijuana and cocaine
into the United States, and in a 1991 attempt to import marijuana.   See 515 U.S. at 392-93.   In
March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with
intent to distribute in association with the defendant's latter attempt to import narcotics.   See
Witte v. United States, 515 U.S. at 392-93.   At sentencing, the district court concluded that,
because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under
U.S.S.G. § 1B1.3, and therefore calculated the defendant's base offense level based on the
aggregate amount of drugs involved in both the 1990 and 1991 episodes. See Witte v. United
States, 515 U.S. at 394.

In September 1992, a second federal grand jury indicted the defendant for conspiring and
attempting to import cocaine in association with the 1990 activities.   See Witte v. United States,
515 U.S. at 392-93.    The defendant moved to dismiss the indictment, arguing that he had already
been punished for the cocaine offenses, because the district court had considered those offenses
relevant conduct at the sentencing for the 1991 marijuana offense.   See Witte v. United States,
515 U.S. at 395.   The district court agreed and dismissed the indictment, holding that punishment
for the cocaine offenses would violate the Double Jeopardy Clause's prohibition against multiple
punishments.   See 515 U.S. at 395.   The United States Court of Appeals for the Fifth Circuit

- 25 -

reversed the district court and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct."   United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).   In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Circuit Courts of Appeals, including the United States Court of Appeals for the Tenth Circuit that had previously considered this question.   See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the circuits and affirmed the Fifth Circuit.   See 515 U.S. at 395.   In finding that the district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."   515 U.S. at 401. The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."   515 U.S. at 402. Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." 515 U.S. at 403.

In United States v. Watts, 519 U.S. 148 (1997), the Supreme Court, in a per curiam opinion, relied upon Witte v. United States' holding and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted.   In

reaching its result in United States v. Watts, the Supreme Court noted that its conclusion was in accord with every Circuit Court of Appeals -- other than the United States Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.   See 519 U.S. at 149 (citing, among other authorities, United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).   The Supreme Court began its analysis in United States v. Watts with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.   See United States v. Watts, 519 U.S. at 151. According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."   United States v. Watts, 519 U.S. at 151-52.

## 2.    The Tenth Circuit's Relevant-Conduct Jurisprudence.

Tenth Circuit case law adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts.   See United States v. Andrews, 447 F.3d 806, 810 (10th Cir. 2006)(applying Witte v. United States' holding to affirm that a career offender enhancement does not violate the Double Jeopardy Clause of the Fifth Amendment).   In United States v. Banda, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for the a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard."   168 F.

App'x at 290.   The Tenth Circuit explained that "'It is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment.   Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'"   168 F. App'x at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant, Troy Coleman, appealed the district court's enhancement of his sentence for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute, but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime.   See 947 F.2d at 1428.   The Tenth Circuit acknowledged that courts had taken various positions whether a sentence may be enhanced for firearms possession despite a defendant's acquittal of firearms charges.   See United States v. Coleman, 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing Coleman's sentence for possession of a firearm.   See United States v. Coleman, 947 F.2d at 1429.   The Tenth Circuit based its conclusion on evidence that: (i) two weapons had been located at the arrest scene; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the

weapons were kept for the protection of conspiracy participants and the narcotics involved.   See United States v. Coleman, 947 F.2d at 1429.   The Tenth Circuit summarized that, in reviewing federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted." United States v. Coleman, 947 F.2d at 1429.

In United States v. Washington, 11 F.3d 1510 (10th Cir. 1993), the defendant, Patrick Washington, argued that the United States should prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence rather than by a preponderance of the evidence.   See 11 F.3d at 1512.   The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his guideline sentence range from 210 to 262 months, to life.   The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required."   United States v. Washington, 11 F.3d at 1515.   Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. at 84).

## **RELEVANT LAW REGARDING JURY NULLIFICATION**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to "an impartial jury."   U.S. Const. amend. VI. "One touchstone of a fair trial is an impartial trier of fact -- 'a jury capable and willing to decide the case solely on the evidence before

it.'"   McDonough Power Equipe., Inc. v. Greenwood, 464 U.S. 548, 554 (1984)(quoting Smith v.

Phillips, 455 U.S. 209, 217 (1982)).   A juror meets the constitutional standard for impartiality

where the juror "can lay aside his opinion and render a verdict based on the evidence presented in

court.'"   Patton v. Young, 467 U.S. 1025, 1037 n.12 (1984).   As the Tenth Circuit has explained,

a "defendant's right to an impartial jury does not include a right to a jury composed of persons who

will disregard the district court's instructions."   United States v. James, 203 F.3d 836, No. CR

98-1479, 2000 WL 136816, at *3 (10th Cir. 2000)(table).

"[T]here is no right to jury nullification."   Crease v. McKune, 189 F.3d 1188, 1194 (10th

Cir. 1999)).   Jury nullification is defined as a

> jury's knowing and deliberate rejection of the evidence or refusal to apply the law
> either because the jury wants to send a message about some social issue that is
> larger than the case itself or because the result dictated by law is contrary to the
> jury's sense of justice, morality, or fairness.

Jury Nullification, Black's Law Dictionary at 936 (9th ed. 2009).   "'While we recognize that a

jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should

encourage jurors to violate their oath.'"   United States v. Gonzalez, 596 F.3d 1228, 1237 (10th

Cir. 2010)(quoting United States v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983)).   "[W]e

disapprove of the encouragement of jury nullification."   United States v. Gonzalez, 596 F.3d at

1237.   The Tenth Circuit in Crease v. McKune cited with approval the United States Court of

Appeals for the Second Circuit's holding in United States v. Thomas, 116 F.3d 606 (2d Cir. 1997),

in which the Second Circuit stated that "the powers of juries to 'nullify' or exercise a power of

leniency is just that -- a power; it is by no means a right or something that a judge should encourage or

permit if it is within his authority to prevent."   116 F.3d at 615.   Moreover, the Tenth Circuit has

held that "the law is clear: a criminal defendant is not entitled to have the jury instructed that it can,

despite finding the defendant guilty beyond a reasonable doubt, disregard the law."   United States v. Rith, 164 F.3d 1323, 1337 (10th Cir. 1999).   See United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992)(holding that criminal defendants are "not entitled to jury nullification instructions").

## ANALYSIS

The Court will deny Sangiovanni's MIL and overrule his Objections.   Provided that the United States presents sufficient foundation evidence for the contested items of evidence to be admitted at trial, the evidence is relevant whether Sangiovanni possessed a firearm, and the probative value outweighs the evidences' prejudicial effect.   Additionally, the Court will not require the jury to find beyond a reasonable doubt that Sangiovanni committed kidnapping while he possessed the pistol, as the Tenth Circuit requires the Court to instruct the jury regarding a fact relevant to a defendant's sentencing only if that fact would increase the statutory maximum term for which the defendant may be sentenced.   The Court will allow the United States to present evidence of the circumstances surrounding the incident giving rise to the indictment, as that evidence is relevant res gestae evidence that will aid the jury in understanding the background of the alleged offense.

## I.   THE COURT WILL ADMIT THE EVIDENCE TO WHICH SANGIOVANNI OBJECTS.

Sangiovanni objects to three items of evidence that the United States seeks to introduce at trial.   First, Sangiovanni objects that the photographs, allegedly of him holding a firearm, have no relevance and that any their prejudicial effect outweighs any probative value they hold.   Second, Sangiovanni objects to the electronic mail transmission that Sangiovanni allegedly sent to VanDerStraeten, arguing that the electronic mail transmission lacks sufficient foundation to be

admitted at trial.   Third, Sangiovanni objects to a telephone call, allegedly from Sangiovanni to VanDerStraeten, arguing that the telephone call lacks foundation, is irrelevant, and cumulative. The Court will overrule Sangiovanni's Objections and deny the requests for exclusion he sets forth in the MIL.

### A.      THE PHOTOGRAPHS.

The photographs, allegedly of Sangiovanni holding a firearm, are probative whether he had the opportunity to possess a firearm, he prepared or planned to possess a firearm, had the knowledge of a firearm, and whether he did not make a mistake in possessing a firearm on the day of the alleged incident.   See Fed. R. Evid. 404(b)(2)(explaining that evidence of another act may be admitted for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").   If Sangiovanni possessed a firearm just before or just after the alleged incident, the jury may reasonably conclude that he had the opportunity to possess a firearm on April 25, 2010.   The Court concludes that, given the maximum probative value of the photographs regarding Sangiovanni's opportunity, preparation, plan, and knowledge, their prejudicial effect does not outweigh any probative value they may have.   See Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d at 1274 ("In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.").   The United States may not, however, introduce the photographs with the suggestion that the jury conclude that Sangiovanni has a character trait of possessing guns and thus "acted in accordance with the . . . trait" on April 25, 2010.   Fed. R. Evid. 404(a)(1).   The United States, thus, seeks to offer the photographs for a proper purpose under rule 404(b), as the photographs are relevant whether Sangiovanni had the opportunity to access a firearm on April 25, 2010.   The

photographs' prejudicial effect does not outweigh their probative value, and, if Sangiovanni requests, the Court will instruct the jury regarding the limited purpose for which it may consider the photographs.   See United States v. Zamora, 222 F.3d at 762 (explaining the four-part test courts must use when evidence that may be prohibited under rule 404(a) is admitted for a proper purpose under rule 404(b)).   The United States must present sufficient foundation evidence for the photographs at trial, and Sangiovanni may fully cross-examine any United States' witness regarding the sufficiency of the foundation evidence.

The photographs are not the clearest photographs.   It is difficult to determine if the Sangiovanni sitting in the courtroom is the person in the photographs, although defendants often change their appearance before a trial to confuse juries.   The person in the photographs looks sufficiently like Sangiovanni today to let the jury make the call; Sangiovanni's arguments go more to the weight of the evidence rather than to a sound ground to exclude it.   Moreover, the United States said it will hear from VanDerStraeten that Sangiovanni sent her the pictures.   See Tr. at 21:3-14 (Cairns, Jessen); id. at 24:24-25:3 (Cairns, Jessen).   Sangiovanni also argues that it is not clear the persons in the photographs are holding a gun, much less the gun at issue in this case. Again, this argument goes to the weight of the evidence and does not provide a sound reason to exclude the photographs.   Jessen testified that one of the photographs shows to him a gun with a large capacity clip.   See Tr. at 23:13-16 (Cairns, Jessen)(Q: "[D]oes this weapon here in this photograph appear to be a .9 millimeter handgun with an extended magazine?" A: "It appears to be a firearm with an extended magazine.").   While the photographs are not definitive, the jury can make their own decision, or disregard the evidence entirely.

Finally, when the jury looks at the photographs, it is probably not going to say, "oh my goodness, he had a gun on March 24, 2010, he must have had a gun on April 25, 2010."   That would be a forbidden propensity use.   It is more likely the jury will conclude that, if the photographs are of any probative value, Sangiovanni had the pistol or a gun before, so he cannot say that he never had that gun or a gun since he has been a felon.   They also show a connection with VanDerStraeten if he tries to minimize that connection.   And he may be threatening her with the photographs.   These photographs, thus, have a possibility of demonstrating opportunity to have the pistol and his motive or intent for possessing a gun.   Evidence like these photographs always has some propensity quality, but they play another role in this case.   If Sangiovanni wants to mitigate the propensity effect, he can create a limiting instruction for the Court to give.

## B.       THE ELECTRONIC MAIL TRANSMISSION.

The Court will also allow the United States to introduce the electronic mail transmission, which Sangiovanni allegedly sent to VanDerStraeten, at trial.   The United States must present sufficient foundation evidence to place the electronic mail transmission in context and establish its relevancy, but the Court determines that if, as the United States asserts, Sangiovanni sent the electronic mail transmission shortly after the incident giving rise to the Indictment, the electronic mail transmission could demonstrate that Sangiovanni attempted to intimidate a witness because he was afraid she would testify as to his guilt.   Relevant evidence is any evidence that makes a fact "more or less probable than it would be without the evidence."   Fed. R. Evid. 401(a).   That Sangiovanni attempted to intimidate VanDerStraeten from testifying makes the possibility that she witnessed him possessing a firearm more probable, as Sangiovanni would have little reason to threaten VanDerStraeten if she did not witness an inculpatory event.   The temporal proximity of

the electronic mail transmission to the alleged offense makes it more relevant for the United States' proof of Sangiovanni's offense.   Although Sangiovanni stated at the hearing that he will not request that the electronic mail transmission be redacted to minimize its prejudicial effect -- he wants the entire text excluded -- the Court nonetheless believes that the probative value of the electronic mail transmission, as the electronic mail transmission demonstrates that VanDerStraeten's testimony against Sangiovanni about the incident on April 25, 2010 would give him a motive to threaten her, outweighs any prejudicial effect the statements in the electronic mail transmission may have on him.   The Court does not believe that the electronic mail transmission would cause the jury to make a decision on an emotional rather than rational basis.   See United States v. Caraway, 534 F.3d at 1301 ("To be unfairly prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (emphasis in original)(secondary quotations omitted)).   Given its maximum probative effect, the electronic mail transmission could allow a reasonable juror to conclude that Sangiovanni had an incentive to threaten VanDerStraeten because of the testimony she will provide against him in Court about his possession of a pistol on April 25, 2010.   See Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d at 1274 ("In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.").   The Court will, thus, deny Sangiovanni's objections to the admission of the electronic mail transmission at trial.   The United States agrees that the heroin statement can come out, and while Sangiovanni does not want to have any part in redacting the statement, the Court will require the United States to take out the phrase about heroin.

- 35 -

C.        THE TELEPHONE CONVERSATION.

Lastly, the Court will admit the telephone conversation allegedly between Sangiovanni and VanDerStraeten.   Provided that the United States lays sufficient foundation for the telephone conversation at trial to demonstrate its context, the telephone conversation contains statements made by Sangiovanni that weigh on whether he possessed a firearm on April 25, 2010.   Some statements come close to confessions that he had a pistol at the April 25, 2010 incident, and the jury should hear the statements and make its decision accordingly.   The Court can give an instruction on out-of-court statements by the defendant, but such statements are generally admissible.   See Tenth Circuit Pattern Jury Instructions Criminal 1.25, at 40 (2011)(Voluntariness of Statement by Defendant)("Such evidence should always be considered by you with caution and weighed with care.").   While the statements discuss the entire incident on April 25, 2010, and not just his use of the pistol, the Court does not see a good way to slice the conversation to get only the firearm comments.   It is again, the res gestae of the April 25, 2010 incident.   The Court should hear the statements in context, because they tend to show an honesty and frankness in an emotional call.   This evidence is not cumulative, as the United States does not appear to have evidence of other similar statements that Sangiovanni made.   Should Sangiovanni desire a limiting instruction regarding certain statements Sangiovanni makes about his potential sentence, the Court will provide one, and because the audio tape was difficult to understand at times, if there are particular statements that should be redacted, the Court will entertain that request.   Their discussions about the events on April 25, 2010, surrounding the incident with the pistol, will likely remain, as res gestae evidence.

- 36 -

**II.    THE COURT WILL NOT REQUIRE THE JURY TO FIND THAT SANGIOVANNI COMMITTED KIDNAPPING BEYOND A REASONABLE DOUBT, AND THE UNITED STATES MAY INTRODUCE EVIDENCE REGARDING THE CIRCUMSTANCES OF THE INCIDENT.**

Sangiovanni asserts that the jury should be required to find beyond a reasonable doubt that he committed kidnapping while possessing a firearm, because, at sentencing, the Court may greatly enhance his sentence if kidnapping is included in his relevant conduct.   In the alternative, Sangiovanni contends that the United States should not be permitted to present evidence of the facts that allegedly demonstrate he kidnapped VanDerStraeten if the jury is not required to find that he committed the offense.   The Court will deny both requests.   First, the Tenth Circuit has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d at 1105 (quoting United States v. Washington, 11 F.3d at 1516). Second, the circumstances in which VanDerStraeten found herself with Sangiovanni, in which she allegedly witnessed him possessing a firearm, are relevant background information that the United States may properly introduce as res gestae.

Blakely v. Washington and United States v. Booker have not changed the district court's enhancement-finding analysis.   "[T]he Supreme Court's holding in Booker" does not prohibit a "district court from making the same factual findings and applying the same enhancements and adjustments to the defendant's sentence as long as it did not apply the Guidelines in a mandatory fashion." United States v. Lawrence, 405 F.3d 888, 890 (10th Cir. 2005).   Accord United States v. Magallanez, 408 F.3d at 684-85.   Were the jury to convict Sangiovanni of being a felon in possession, the fact that part of his relevant conduct included the commission of kidnapping would enhance his sentence but not increase the maximum sentence he may receive statutorily for the offense.   Sangiovanni conceded at the hearing that the increase to his sentence based upon his

commission of kidnapping would be an enhancement, but not increase the statutory maximum sentence he may receive.   See Tr. at 40:21-22 (Robert)("[I]t's not even so much[] an enhancement although I guess technically it would be . . . ."); U.S.S.G. § 2K2.1(c)(providing that if a defendant possessed a firearm or ammunition in "connection with the commission or attempted commission of another offense," then the sentencing court is to enhance the defendant's sentence based upon the offense level provided for the other offense).   "Apprendi does not apply to the present advisory-Guidelines regime."   United States v. Ray, 704 F.3d at 1314.   See United States v. Fredette, 315 F.3d at 1245 ("Apprendi does not apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum.").   Although the Court is sympathetic to Sangiovanni's position that more sentencing issues should be submitted to the jury, the case law does not require the Court to require the jury to find beyond a reasonable doubt a fact that would increase Sangiovanni's guidelines sentence, but does not increase the statutory maximum sentence he may serve.[4]   See United States v. Reyes-Vencomo, 2012 WL 2574810, at *3 ("[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in Apprendi v. New Jersey.").

Sangiovanni requests an instruction that would require the jury to find that he kidnapped VanDerStraeten beyond a reasonable doubt.   See Defendant's Requested Jury Instructions at 4,

---

[4] Indeed, before the Supreme Court's decision in United States v. Booker, the Court ruled that, under Blakely v. Washington, neither the Court nor the United States Probation Office's findings of fact could be used to enhance defendant's sentence.   See United States v. Tso, 376 F. Supp. 2d 1166, 1168-69 (D.N.M. 2004)(Browning, J.)("The Court and the Probation Office cannot find the critical facts that would increase Tso's sentence.").   The Court explained that Blakely v. Washington, before United States v. Booker, "precludes judicial fact finding under the preponderance of the evidence standard which would increase a defendant's sentence under the federal sentencing guidelines," and that "judicial fact finding which would enhance a sentence violates the defendant's Sixth Amendment right to trial by jury."   United States v. Tso, 376 F. Supp. 2d 1166, 1168-69 (D.N.M. 2004)(Browning, J.).

filed March 11, 2013 (Doc. 43)("In order to find Mr. Sangiovanni guilty of the New Mexico state offense of kidnapping, the evidence must establish each of the following elements beyond a reasonable doubt.").   If the Court were to just add another offense to find beyond a reasonable doubt, the exercise would not help Sangiovanni.   If the jury "acquitted" Sangiovanni of kidnapping under the beyond a reasonable doubt standard, the Court could still find him guilty of that offense by a preponderance of the evidence.   United States v. Olsen, 519 F.3d at 1105 ("[R]ecognizing strong arguments that relevant conduct causing a dramatic increase in sentence out to be subject to a higher standard of proof," but affirming that the Tenth Circuit has "long held that sentencing facts . . . need only be proven by a preponderance.").   See United States v. Banda, 168 F. App'x at 290 (rejecting a defendant's argument that a district court should have found sentencing factors by a preponderance of the evidence standard, "rather than a jury applying a beyond-a-reasonable-doubt standard").   Thus, a jury's acquittal under a beyond a reasonable doubt standard would not preclude the Court from considering other facts which may, if the Court finds the facts by a preponderance of the evidence, enhance Sangiovanni's sentence.   The Court, therefore, will not require the jury to find beyond a reasonable doubt that Sangiovanni committed kidnapping while possessing a firearm.

The Court will allow the United States to submit evidence regarding the circumstances and background of Sangiovanni's alleged offense.   "Evidence of other crimes should not be suppressed when those facts come in as res gestae -- as part and parcel of the proof of the offense[ ] charged in the indictment."   United States v. Kimball, 73 F.3d at 272 (alteration in original)(internal quotations and citations omitted).   Although the United States' evidence of the circumstances surrounding the alleged offense may demonstrate that Sangiovanni kidnapped

VanDerStraeten, the Tenth Circuit allows such evidence "in order to complete the story of the crime on trial by proving its immediate context or the res gestae."   United States v. Kimball, 73 F.3d at 272.   If the United States were not allowed to submit evidence that Sangiovanni got into a car with VanDerStraeten, and used the pistol to threaten her life as well as to threaten to kill himself, the jury would likely be confused as to how and why VanDerStraeten has information regarding Sangiovanni's alleged possession of a firearm.   The complete story tells the jury why Sangiovanni had a pistol that day, and with that evidence, the case becomes a swearing match between VanDerStraeten and Sangiovanni.   The story of the complete incident is powerful evidence that explains why he had the pistol.   This evidence provides a "causal, temporal [and] spatial connection with the charged offense."   United States v. Hardy, 228 F.3d at 748.   The Court has previously allowed res gestae evidence to aid a jury's understanding of the context of an alleged offense, so that the jury can weigh whether the facts are as a witness testifies.   See Wilson v. Jara, 2011 WL 6739166, at *1, *8 (admitting evidence that a plaintiff spat on police officers as helpful whether the plaintiff's conduct encouraged her son to resist the officer's arrest).   If Sangiovanni desires a limiting instruction, informing the jury that they are only to consider the charged offense in reaching the verdict, such as Tenth Circuit Pattern Jury Instruction Criminal 1.19, "[t]he defendant is not on trial for any act, conduct, or crime not charged in the indictment," the Court may provide one.   The Court will, therefore, allow the United States to submit evidence about the circumstances under which VanDerStraeten allegedly observed Sangiovanni possess the pistol.

**IT IS ORDERED** that (i) Mr. Sangiovanni's Motion in Limine, filed March 11, 2013

(Doc. 45), is denied; and (ii) Mr. Sangiovanni's Objections to the Government Exhibits, filed

March 13, 2013 (Doc. 47), are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzalez
    United States Attorney
Adam S. Rowley
    Assistant United States Attorney
Norman Cairns
    Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Marc H. Robert
    Assistant Federal Public Defender
Albuquerque, New Mexico

       *Attorney for the Defendant*