## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

      Plaintiff,

    vs.                            No. CR 10-3239 JB

CHRISTIAN ALEXANDER SANGIOVANNI,

      Defendant.

### MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the United States' Sealed Motion in Limine to Preclude Defendant form Impeaching Witness Shelby Vanderstraeten with Evidence of Drug Use, filed Mar. 4, 2013 (Doc. 32)("MIL").   The Court held a hearing on March 15, 2013.   The primary issue is whether the Court should allow Defendant Christian Alexander Sangiovanni to cross-examine the United States' witness, Shelby VanDerStraeten, regarding her previous and current use of drugs.   The Court will deny the MIL in part and grant in part.   The Court will allow Sangiovanni to attack VanDerStraeten's competency to recall events, but will not allow Sangiovanni to use the photographs of VanDerStraeten for impeachment.

---

[1] In its Sealed Memorandum Opinion and Order, filed March 18, 2013 (Doc. 54)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO.   See Sealed MOO at 1 n.1.   The Court gave the parties ten calendar days to provide notice of any proposed redactions.   See Sealed MOO at 1 n.1.   The parties have not contacted the Court or made any filings within CM/ECF, the Court's Case Management/Electronic Case Files, to indicate that they have any proposed redactions.   Consequently, the Court is now refiling the Sealed MOO in an unsealed form.

## FACTUAL BACKGROUND

Sangiovanni is indicted on one count: felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   See Indictment, filed Dec. 1, 2010 (Doc. 4). The grand jury found that Sangiovanni, a felon, possessed a Smith & Wesson, model 459, 9mm pistol and approximately twelve Remmington 9mm caliber cartridges of ammunition.   See Indictment at 1.   The incident giving rise to Sangiovanni's indictment occurred on April 25, 2010, when Sangiovanni allegedly assaulted VanDerStraeten, threatening to kill them both with the pistol.   See MIL at 1.   The Plaintiff United States of America intends to call VanDerStraeten as a witness at trial.   See United States's Witness List at 1, filed Mar. 7, 2013 (Doc. 25).   Pursuant to the United States' duty under Giglio v. United States, 405 U.S. 150, 154 (1972),[2] the United States turned over to Sangiovanni photographs of VanDerStraeten "engaging in what could be interpreted as drug use involving controlled substances" before trial.   MIL at 1-2.

## PROCEDURAL BACKGROUND

The United States does not acquiesce to Sangiovanni's use of the photographs of VanDerStraeten at trial for impeachment.   See MIL at 2.   The United States notes that the only issue in this case is whether Sangiovanni possessed a firearm and ammunition, and, therefore, evidence of VanDerStraeten's drug use is "not relevant to whether or not Defendant Sangiovanni possessed a firearm."   MIL at 2.   The United States admits that "[e]vidence that a witness has used illegal drugs may be probative of the witness' 'possible inability to recollect and relate,'" but contends that such evidence is only admissible where the defendant's mental capacity is

---

[2] Under Giglio v. United States, the prosecution is required to turn over to a criminal defendant evidence that the defendant may use to impeach a government witness.   See 405 U.S. at 153.

"legitimately at issue," and that VanDerStraeten's ability to recollect is not at issue in this case. MIL at 2 (quoting United States v. Banks, 520 F.2d 627, 631 (7th Cir. 1975). The United States asserts that the cases where courts have allowed "broad cross-examination on the issue of drug addiction to impeach witnesses are readily distinguishable from this case." MIL at 2. The United States asserts that broad cross-examination on a witness' use of drugs may be necessary where the witness' drug use or addiction is probative of the witness' motivation to testify. See MIL at 2 (citing United States v. Fowler, 465 F.2d 664, 668 (D.C. Cir. 1972), United States v. Kinnard, 465 F.2d 566, 572-75 (D.C. Cir. 1972), United States v. Masino, 275 F.2d 129, 132 (2d Cir. 1960)). The United States notes that cross-examination of a witness' drug use may be necessary as well where the witness is intoxicated while testifying. See MIL at 3 (citing Wilson v. United States, 232 U.S. 563 (1914)).

The United States also contends that drug addiction is "fraught with potential prejudice," and thus evidence of a witness' drug use must be "handled with some sensitivity." MIL at 3 (citing Fed. R. Evid. 403, United States v. Banks, 520 F.2d 627, United States v. Kearney, 420 F.2d 170, 174 (D.C. Circuit 1969)). The United States contends that evidence of a witness' drug use is inadmissible when used as a "general character attack." MIL at 3 (citing United States v. Cameron, 814 F.2d 403 (7th Cir. 1987), United States v. Sampol, 636 F.2d 621, 666-67 (D.C. Cir. 1980), United States v. Banks, 520 F.2d 627). The United States asserts that, "[a]t a minimum," the Court should not allow Sangiovanni to use the photographs of VanDerStraeten, under rule 608(b) of the Federal Rules of Evidence. MIL at 3.

The Court held a hearing on March 15, 2013. See Transcript of Hearing (taking Mar. 15,

2013)("Tr."). [3]   The United States stated that, although it provided the photographs of VanDerStraeten to Sangiovanni, it in no way acquiesces to their use in trial.  See Tr. at 3:3-6 (Cairns).  The United States asserted that the photographs could only be used to impeach VanDerStraeten if Sangiovanni could demonstrate that VanDerStraeten was using narcotics either during the incident giving rise to the indictment or that she is under the influence of narcotics when she testifies at trial.  See Tr. at 3:9-14 (Cairns).  The United States asserted that Sangiovanni's inquiry of VanDerStraeten regarding her previous or current use of narcotics should be done outside the presence of the jury, and that, if Sangiovanni cannot lay a foundation for VanDerStraeten previous or current use of narcotics, then the photographs are not relevant to impeach her.  See Tr. at 3:14-20 (Cairns).  The United States asserted that, without the requisite foundation evidence, the photographs would be used as a general attack on VanDerStraeten's character, which the law prohibits.  See Tr. at 3:19-22 (Cairns).  The United States stated that VanDerStraeten will testify that she was not under the influence of narcotics on the day of the incident, and that she has been "clean and free of drugs for the past three years."  Tr. at 4:3-10 (Cairns).  The United States asserted, thus, that any evidence of VanDerStraeten's previous drug use would have a prejudicial effect outweighing its probative value and that the Court should exclude the evidence under rule 403.  See Tr. at 4:11-14 (Cairns).

Sangiovanni asserted that the United States wants him to present a urinalysis of VanDerStraeten from the time of the incident and before the trial, and he contended that the law does not require such evidence.  See Tr. at 4:20-25 (Robert).  Sangiovanni asserted that he has evidence that VanDerStraeten was using drugs on the day of the incident, and is currently a drug

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

user.  See Tr. at 5:1-12 (Robert).  Sangiovanni contended that the photographs demonstrate that VanDerStraeten was "comfortable with [the] use[] of drugs around the time of the incident."  Tr. at 5:18-22 (Robert).  Sangiovanni contended that the jury should know about a witness' previous drug use and whether the witness is a habitual drug user, or used drugs around the time frame of any incident upon which the witness testifies.  See Tr. at 5:23-6:4 (Robert).  Sangiovanni contended that to "say otherwise depri[ves] Mr. Sangiovanni of the opportunity to properly confront and cross-examine this witness."  Tr. at 6:5-7 (Robert).  Sangiovanni asserted that, under the relevant case law, courts recognize that cross-examination regarding a witness' previous drug use "go[es] directly to the question that a jury has to decide in determining whether or not to believe what a witness has to say."  Tr. at 6:8-21 (Robert).

The Court inquired of Sangiovanni what questions he intends to ask VanDerStraeten regarding her drug use.  See Tr. at 7:3-4.  Sangiovanni stated that he intends to "confront[] her with the fact of her drug use in [and] around April 25th of 2010, when all this happened and the fact that s[h]e was a habitual drug user at that time."  Tr. at 7:5-8 (Robert).  Sangiovanni stated that he believes VanDerStraeten was using cocaine and methamphetamine.  See Tr. at 7:10-11 (Robert).  Sangiovanni asserted that he has a good-faith basis to question VanDerStraeten regarding her drug use at the time of the incident, based upon his investigation of a variety of individuals who knew her at the time.  See Tr. at 7:14-18 (Robert).  The Court inquired what Sangiovanni intends to do if VanDerStraeten denies using drugs, and Sangiovanni stated that he agrees with the United States that he cannot bring in extrinsic evidence to impeach VanDerStraeten.  See Tr. at 7:21-25 (Robert).  Sangiovanni stated that, if VanDerStraeten admits that she used drugs at the time of the incident, he intends to mention that fact in his closing

- 5 -

arguments to the jury, as relevant of VanDerStraeten's judgment and ability to perceive reality at the time of the incident.  See Tr. at 8:8-22 (Court, Robert).  The Court inquired whether Sangiovanni intends to attack VanDerStraeten's memory and ability to perceive events, and he stated that challenge is his intention.  See Tr. at 9:5-9 (Court, Robert).

The United States responded that Sangiovanni intends to argue that VanDerStraeten's judgment was "bad at the point in time," which the United States asserted is not relevant whether she observed what she believes she did.  Tr. at 9:12-17 (Cairns).  The United States asserted that, if Sangiovanni cannot demonstrate that drug use altered VanDerStraeten's ability to perceive her surroundings then the evidence of her drug use is not appropriate for impeachment.  See Tr. at 9:18-20 (Cairns).  The Court responded that the cases discussing such evidence do not require a cross-examiner to prove that a witness' memory was faulty because of his or her drug use before introducing the evidence, and the United States admitted that the Court is correct.  See Tr. at 9:21-10:8 (Court, Cairns).  The United States asserted, nonetheless, that Sangiovanni should not be allowed to go into detail regarding VanDerStraeten's previous drug use, and should only be allowed to raise her drug use as a factor for the jury to consider, but that Sangiovanni should not be allowed to argue that VanDerStraeten's drug use is a factor that "relates to[] her ability to recollect and her ability to make observations[,] her ability to perceive."  Tr. at 10:12-14 (Cairns).  The Court inquired how the United States responds to the Tenth Circuit Pattern Jury Instruction (Criminal) No. 1.16, which states that the "'testimony of a drug user must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs,'" and instructs the Court to inform the jury of which witness exactly may be considered to be an "'abuser of d[rugs],'" and that the jury "'must determine whether the testimony of that

witness has been affected by the use of drugs or the [need] for drugs.'"   Tr. at 10:21-11:3

(Court)(quoting Tenth Circuit Pattern Jury Instruction (Criminal) No. 1.16).   The United States

responded that to classify a witness as an "abuser of drugs" is a "pretty serious matter" and that it

would like to research the meaning of that term before any witness is classified as one.   Tr. at

11:4-10 (Cairn).   The Court stated that it does not intend to use that jury instruction, because no

party has yet asked for it, but expressed that the existence of such a jury instruction "shows some

latitude about the issue."   Tr. at 11:11-17 (Court).   The Court also noted that under United States

v. Robinson, 583 F.3d 1265 (10th Cir. 2009), the United States Court of Appeals for the Tenth

Circuit determined it was reversible error for a court to not allow a defendant to cross-examine a

witness on his "extensive" use of prescription medications since 2000, because the witness' drug

use suggested that he may have been unable to testify competently at trial.   Tr. at 12:5-15 (Court).

The Court stated that the Tenth Circuit's standard appears to allow more questioning than

Sangiovanni's proposed questions regarding VanDerStraeten's use of drugs at the time of the

incident.   See Tr. at 12:16-18 (Court).   The United States agreed.   See Tr. at 12:19-20 (Cairns).

The Court also noted that it was less concerned about limiting Sangiovanni's scope of

cross-examination because VanDerStraeten is only a witness, and not a party to the case.   See Tr.

at 12:21-13:1 (Court).   The United States stated that it would research more over the weekend

and, depending on Sangiovanni's questions at trial, may raise more objections at that time to his

cross-examination of VanDerStraeten.   See Tr. at 13:2-12 (Cairns).   The Court stated that it is

inclined to allow Sangiovanni to cross-examine VanDerStraeten regarding her previous and

current drug use.   See Tr. at 14:21-25 (Court).

## RELEVANT LAW REGARDING ADMISSIBILITY OF EVIDENCE OF A WITNESS' DRUG USE

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."   Fed. R. Evid. 602.   A party may attack a witness' capacity by "'showing that his or her capacity to observe, remember, or narrate is impaired.   Consequently, the witness' capacity at the time of the event, as well as at the time of trial, is significant.'"   United States v. Robinson, 583 F.3d at 1272 ((quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Fed. Evid. § 607.05(1)(Joseph M. McLaughlin Ed., 2d ed. 2009)).   The Tenth Circuit recognizes that a witness' "'ability to perceive the underlying events and testify lucidly at trial'" may be attacked through evidence of the witness' use of illicit substances.   United States v. Apers, 441 F.3d 1162, 1195-96 (10th Cir. 2006)(quoting Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir. 1987)); United States v. Peet, 46 F.3d 1152, 1995 WL 21614, at *3 (10th Cir. 1995)(table)("While drug use may be used to attack a witness's ability to perceive the underlying events and testify lucidly at trial, it may not be used to attack general credibility.")[4]; United States v. Fairchild, 46 F.3d 1152, 1995 WL 21611, at *3 (10th Cir. 1995)(same).   "Evidence of a witness's drug use may be admitted to show the effect of the drug use on the witness's memory or recollection of events."   United States v. Dixon, 38 F. App'x 543,

---

[4] United States v. Peet is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that United States v. Peet has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

548 (10th Cir. 2002)(citing <u>United States v. Smith</u>, 156 F.3d 1046, 1054-55 (10th Cir. 1998)).

Accordingly, in <u>United States v. Robinson</u>, the Tenth Circuit held that a district court's refusal to allow a defendant to cross-examine a confidential informant ("CI") on his use of prescription medications to treat his hallucinations violated the defendant's sixth amendment right to confront a witness.   The informant's "[e]xtensive drug use since 2000" suggested that he may have been unable to testify competently at trial, either because he was under the influence of drugs at the time, or because he could not adequately recall the events about which he testified.   583 F.3d at 1274.   "In light of the substantial evidence calling into question the CI's perception and retention abilities, Robinson might have argued that the CI did not remember the events at issue but was merely parroting the [government's] version of events."   583 F.3d at 1274.   Because the CI was the government's key witness to the defendant's alleged firearm sale and his testimony was completely uncorroborated, the Tenth Circuit held that it was reversible error for the district court to not allow the defendant to cross examine the CI on his use of prescription medications and mental health history.   <u>See</u> 583 F.3d at 1274-75.   The Tenth Circuit noted that the district court allowed the defendant to cross-examine the CI regarding his illegal drug use, and thus, unlike the preclusion of cross-examination on the CI's drug use, the district court "did not violate the Sixth Amendment in that respect."   583 F.3d at 1274 n.9.   Similarly, in <u>United States v. Smith</u>, the Tenth Circuit held that questioning a witness about her lysergic acid diethylamide ("LSD") use twenty-years earlier was permissible, where the evidence was used to establish her "credibility to recall and recollection, her memory," and was not a general attack on her character for truthfulness.   156 F.3d at 1054-55.   The Tenth Circuit noted that, "[w]hile the use of certain drugs in the remote past may be entirely irrelevant to a witness's ability to remember, in this

instance, it was for the jury to decide whether Ms. Doyle's use of LSD twenty years earlier affected her ability to recall the evening in question."   156 F.3d at 1055.   The Court has previously allowed cross-examination regarding a plaintiff's admissions and denials of methamphetamine, marijuana, and alcohol use, and whether the plaintiff was using narcotics on the day of an incident in which the Albuquerque Police Department allegedly used excessive force against the plaintiff.   See Chamberlin v. City of Albuquerque, No. CIV 02-0603 JB/ACT, 2005 WL 3213515, at **1-2 (D.N.M. July 31, 2005)(Browning, J.).   The Court determined that questions regarding the plaintiffs' history of drug and alcohol abuse may be relevant in determining whether he was entitled to damages for emotional distress from the incident.   The Court also determined that questions regarding the plaintiffs' use of narcotics on the day of the incident may be relevant regarding the plaintiff's "ability to accurately perceive and recall the incidents on the day in question."   2005 WL 2313515, at *2.

On the other hand, the Tenth Circuit has recognized that the amount of evidence of a party's previous drug use that is admissible may be limited.   For example, in Meller v. Heil Co., 745 F.2d 1297, 1303 (10th Cir. 1984), the Tenth Circuit held that a district court properly excluded a witness' hashish pipes from evidence at trial in a wrongful death suit, because the danger of unfair prejudice substantially outweighed the pipes' probative value.   See 745 F.2d at 1303 (citing Fed. R. Evid. 403).   The defendant had sought to use the hashish pipes to impeach the plaintiff's testimony regarding the decedent's life expectancy, but the district court determined that the defendant's assertion that the plaintiff's marijuana use diminished his life expectancy lacked a medical foundation.   The district court further found, and the Tenth Circuit agreed, that "[Defendant] Heil sought to introduce the hashish pipes for the specific purpose of arousing juror

sentiment against the decedent," an improper purpose for the evidence of the decedent's drug use. 745 F.2d at 1303.   In <u>United States v. Laplatney</u>, 157 F. App'x 93 (10th Cir. 2005)(unpublished), the Tenth Circuit found that a district court properly prohibited a defendant from admitting evidence of a witness' booking photographs over seven years, which the defendant alleged demonstrated that she used methamphetamine, based upon her physical deterioration displayed in the photographs.   <u>See</u> 157 F. App'x at 97.   The defendant did not provide any evidence that the photographs alone demonstrated the witness' ongoing methamphetamine use, and, thus, the district court did not admit the photographs under rule 901 of the Federal Rules of Evidence.[5]   <u>See</u> 157 F. App'x at 97.   Similarly, in <u>United States v. Cordova</u>, 340 F. App'x 427 (10th Cir. 2009)(unpublished), the Tenth Circuit recognized that a defendant need not question a witness regarding all of the details of her drug use to satisfy the defendant's Sixth Amendment right to confront a witness.   The defendant asserted that the district court "unconstitutionally limited cross-examination" to questions regarding the witness' drug use during the time in question, but the Tenth Circuit held that this limitation was not a violation of the defendant's constitutional rights.   350 F. App'x at 435-436.   <u>See</u> <u>Smith v. Sirmons</u>, 200 F. App'x 822, 826 (10th Cir. 2006)(unpublished)(holding that a district court's limitation of a defense counsel's cross-examination regarding a witness' drug use to whether the victim had ever paid the witness with drugs did not violate a defendant's Sixth Amendment right to confrontation, because "[t]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might

---

[5] Rule 901 of the Federal Rules of Evidence requires that to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."   Fed. R. Evid. 901.

wish'" (quoting <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986)).

**<u>RELEVANT LAW REGARDING RULE 403</u>**

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   <u>See</u> <u>United States v. Record</u>, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   <u>United States v. Pettigrew</u>, 468 F.3d 626, 638 (10th Cir. 2006)(quoting <u>United States v. Sides</u>, 944 F.2d 1554, 1563 (10th Cir. 1991)).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   <u>Deters v. Equifax Credit Info. Servs., Inc.</u>, 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."   <u>United States v. Smalls</u>, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, <u>see</u> <u>United States v. Lugo</u>, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, <u>see</u> <u>United States v. Bice-Bey</u>, 701 F.2d 1086, 1089 (4th Cir. 1983); <u>United States v. Masters</u>, 622 F.2d 83, 87-88 (4th Cir. 1980).   As the Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its
> greater experience in evidentiary matters, courts of appeals afford broad discretion

- 12 -

> to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to the defendant's guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."  United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

## LAW REGARDING RULE 608 EVIDENCE

Rule 608 of the Federal Rules of Evidence provides mechanisms for attacking witnesses' character for truthfulness or untruthfulness.  See Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 1132505, at *5 (D.N.M. Mar. 20, 2012)(Browning, J.); United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.).  Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.   But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a).   The truthfulness or untruthfulness of a witness may be attacked by opinion or reputation evidence, without any proffer of evidence of a good character for truthfulness.   See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer whether he had been suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and called a member of the department to testify directly about his opinions or reputation of [the credibility of the officer].").   To establish a proper foundation for the opinion or reputation testimony, a witness must show "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded."   United States v. Rios, 92 F.3d 1519, 1529 (10th Cir. 1996), overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)(quoting United States v. Bedonie, 913 F.2d 782, 802 (10th Cir. 1990)).

Rule 608(b) provides the rule for admission of specific instances of conduct:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.   But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> > **(1)** the witness; or
> >
> > **(2)** another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).   "Under Federal Rule of Evidence 608(b), specific unrelated instances of a

witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." United States v. Beltran-Garcia, 338 F. App'x 765, 770 (10th Cir. 2009)(unpublished). "Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence." United States v. Beltran-Garcia, 338 F. App'x at 770.

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608(b)'s exclusion of extrinsic evidence does not apply to using extrinsic evidence to contradict a witness's testimony at trial. See 2 Stephen A. Saltzburg, Michael A. Martin, Daniel J. Capra, Fed. Rules of Evidence Manual § 608.02[7], at 608-17 (9th ed. 2006)("[E]xtrinsic evidence offered for contradiction is not barred by Rule 608(b) . . . ."). Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment." Fed. R. Evid. 608 advisory committee's note to 2003 amendment (emphasis added). See Fed. Rules of Evidence Manual, supra § 608.02[7], at 608-16 ("The exclusionary principle of Rule 608(b) applies only . . . to impeach the witness' character for veracity. If the specific act is offered to impeach the witness on other grounds, then the absolute preclusion of extrinsic evidence is inapplicable."). The Tenth Circuit has noted: "This rule [which] precludes the admission of

extrinsic evidence . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false. . . ."   United States v. Fleming, 19 F.3d 1325, 1331 (10th Cir. 1994)(citing 27 C. Wright & V. Gold, Fed. Practice and Procedure § 5096, at 546-47 (1990)).   "If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying."   United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008).   "This doctrine, known as specific contradiction, allows such impeachment even if the evidence elicited ordinarily might be collateral or otherwise inadmissible."   Montoya v. Shelden, No. CIV 10-0360 JB/WDS, 2012 WL 4950707, at *12 (D.N.M. Oct. 12, 2012)(Browning, J.)(quoting United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006))(internal quotations and alterations omitted). Thus, an opposing party may not prove up past specific instances of truthfulness or untruthfulness extrinsically unless and until the witness has offered false statements on the stand.   See Montoya v. Shelden, 2012 WL 4950707, at *22   ("Should Lovato disclaim any of the information regarding his providing false information to Chavez or the investigation board, the Court will allow the Montoyas to prove up the lies extrinsically. . . .").

## ANALYSIS

The Court will allow Sangiovanni to cross-examine VanDerStraeten regarding her previous and current use of drugs.   Sangiovanni may attack VanDerStraeten's "'ability to perceive the underlying events and testify lucidly at trial'" through that evidence.[6]   United States

---

[6] Sangiovanni believes that VanDerStraeten has used methamphetamine and cocaine in the past.  See Tr. at 7:9-11 (Robert)(The Court: "And what kind of drugs was she using?" Mr. Robert: "Cocaine and methamphetamine is my understanding, Your Honor.").  There is some evidence that cocaine and methamphetamine use can cause memory loss.  See Sandra Blakeslee, This is Your Brain on Meth: A 'Forest Fire' of Damage, N.Y. Times, July 20, 2004, available at

v. Apers, 441 F.3d at 1195-96 (quoting Jarrett v. United States, 822 F.2d at 1446).   On the other

hand, Sangiovanni may not inquire into VanDerStraeten's previous and current drug use to attack

her character for truthfulness generally, and may not introduce the photographs into evidence.

    There does not appear to be any doubts that Sangiovanni has a good faith basis to ask

whether VanDerStraeten was using drugs around the time that the alleged events occurred.   Thus,

the only issue is whether that information provides a sufficient basis to ask the questions that

Sangiovanni wants to ask.   Sangiovanni wants to: "[C]onfront[] her with the fact of her drug use

in [and] around April 25th 2010, when all this happened and the fact that s[h]e was an[] habitual

drug user at that time."   Tr. at 7:5-8 (Robert).[7]

---

http://www.nytimes.com/2004/07/20/science/this-is-your-brain-on-meth-a-forest-fire-of-damage.
html (reporting on a M.R.I study of methamphetamine addicts, and stating that "methamphetamine
addicts fared significantly worse on memory tests than health people the same age"); William J.
Cromie, Researchers See How Cocaine Affects the Brain, Harvard University Gazette, Mar. 12,
1998 (reporting on a Harvard University study's finding that cocaine users experience slower
blood flow in the brain, which is linked to memory loss).

    [7] Sangiovanni informed the Court, at the hearing, that he has no intention of using the
photographs to question VanDerStraeten's ability to recall the events about which she testifies.
See Tr. at 7:21-8:7 (Robert)("I think he['s] right I'm not allowed to bring in extrinsic evidence of
an impeachment issue. . . .   I think the rules require that if I'm impeaching a witness that I'm
basically stuck with their answer.").   While the Court will enforce Sangiovanni's representation
to the Court and the United States that he will not use the photographs as extrinsic evidence to
impeach VanDerStraeten, the Court does not necessarily agree that rule 608 prohibits Sangiovanni
from using the photographs to question VanDerStraeten's ability to testify competently, because
rule 608's "prohibition on extrinsic evidence applies only when the sole reason for proffering that
evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic
evidence for bias, competency and contradiction impeachment."   Fed. R. Evid. 608 advisory
committee's note to 2003 amendment (emphasis added).   Thus, Sangiovanni's questions
regarding VanDerStraeten's competency to perceive or recall events are not within rule 608's
purview.   The Court is also not convinced that the photographs are likely to be more prejudicial
than probative.   After all, VanDerStraeten is not a party and certainly not the Defendant, who may
need special protection from impeachment on drug use to avoid conviction for being a drug user
rather than for committing the crime.

    The Court does not prohibit Sangiovanni from using the photographs to question
VanDerStraeten's ability to competently testify under rule 608, because rule 608's "prohibition on

VanDerStraeten's ability to recall the events about which she will testify at trial is

important to the United States' case against Sangiovanni.  If VanDerStraeten was under the

influence of narcotics at the time of the incident, or is under the influence of narcotics at trial when

_____

extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or
support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias,
competency and contradiction impeachment," thus, Sangiovanni's questions regarding
VanDerStraeten's competency are not within rule 608's purview.  Fed. R. Evid. 608 advisory
committee's note to 2003 amendment (emphasis added).  The Court concludes, however, that the
photographs are likely to be more prejudicial than probative.  As the Tenth Circuit has previously
explained, "[t]he Confrontation Clause guarantees an opportunity for effective cross-examination,
not cross-examination that is effective in whatever way, and to whatever extent, the defense might
wish."  Smith v. Sirmons, 200 F. App'x at 826.
    Sangiovanni apparently has made the decision that he can adequately question
VanDerStraeten's credibility by asking her whether she was using drugs at the time of the incident
or is under the influence of drugs when she testifies at trial, and that photographs of
VanDerStraeten using drugs is problematic.  The Court is not concerned that if she denies drug
use, the photographs, implying all that they may, would cause the jury to have an unfairly adverse
emotional response to her testimony.  See United States v. Caraway, 534 F.3d at 1301 ("To be
unfairly prejudicial, the evidence must have an undue tendency to suggest decision on an improper
basis, commonly, though not necessarily, an emotional one."  (emphasis in original)).  In Meller
v. Heil Co., the Tenth Circuit affirmed a district court's decision to exclude extrinsic evidence of a
witness' marijuana use where the hashish pipes the defendant sought to introduce not only lacked
impeachment value, but also because the hashish pipes were likely to arouse juror sentiment
against the decedent in the case.  See 745 F.2d at 1303.  Without Sangiovanni's decision and
representation not to use the photographs, the Court might have prohibited the use until
VanDerStraeten denied drug use in the relative time frame.  On the other hand, the Court will
probably not prohibit Sangiovanni from using the photographs to impeach VanDerStraeten's
testimony through contradiction, provided that Sangiovanni laid the proper foundation to
demonstrate that the photographs are relevant to contradict her testimony.  See Fed. R. Evid. 608
advisory committee's note to 2003 amendment.  For example, if VanDerStraeten denies ever
having used drugs in the past, a photograph of her using drugs might be relevant to contradict her
testimony.  Sangiovanni would have to be careful to lay sufficient foundation evidence for the
photographs to be relevant for impeachment before he attempted to introduce them at trial, but the
Court does not see her ability to perceive to be so collateral as to prohibit the photograph's use.
See United States v. Laplatney, 157 F. App'x at 97 (affirming a district court's refusal to admit
evidence of a witness' alleged physical deterioration over seven years where the defendant sought
to introduce the photographs to demonstrate that the witness used methamphetamine, but failed to
provide any evidence linking the photographs to methamphetamine use).  Nevertheless, because
Sangiovanni agreed to not use the photographs at trial, the Court will enforce his representation.

she testifies, her ability to recollect the events about which the United States questions her could be limited.   See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").   The Tenth Circuit recognizes that "[e]vidence of a witness's drug use may be admitted to show the effect of the drug use on the witness's memory or recollection of events;" therefore, the Court cannot soundly preclude Sangiovanni from questioning VanDerStraeten's ability to recall the events about which she testifies through evidence of her previous and current drug use.   United States v. Dixon, 38 F. App'x at 548.   Based on Sangiovanni's representation that he will not use the photographs at trial, the Court will not allow Sangiovanni to submit the photographs of VanDerStraeten allegedly using drugs to question her competency to recall previous events.   See Tr. at 7:21-25 (Robert)("I think[] he['s] right I'm not allowed to bring in extrinsic evidence of an impeachment issue.")

IT IS ORDERED that the United States' Sealed Motion in Limine to Preclude Defendant form Impeaching Witness Shelby Vanderstraeten with Evidence of Drug Use, filed Mar. 4, 2013 (Doc. 32), is granted in part and denied in part.   Defendant Christian Alexander Sangiovanni may question Shelby VanDerStraeten regarding her previous and current drug use, but may not use photographs of her using drugs to contradict her testimony, or otherwise, even if he lays sufficient foundation evidence of their relevance for contradiction purposes, because he represented to Plaintiff United States of America and the Court that he would not.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzalez
   United States Attorney
Adam S. Rowley
    Assistant United States Attorney
Norman Cairns
    Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Marc H. Robert
   Assistant Federal Public Defender
Albuquerque, New Mexico

     *Attorney for the Defendant*